```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                      TAMPA DIVISION
```

SOUTHERN-OWNERS INSURANCE COMPANY,

       Plaintiff,
v.                              CASE NO. 8:12-cv-1922-T-33TBM

WALL 2 WALLS CONSTRUCTION, LLC
and YARBRA GIBBS,

       Defendants.
_____/

WALL 2 WALLS CONSTRUCTION, LLC

       Counter-Plaintiff,
v.

SOUTHERN-OWNERS INSURANCE COMPANY,

       Counter-Defendant.
_____/

## ORDER

This matter is before the Court pursuant to Plaintiff Southern-Owners Insurance Company's Motion for Summary Judgment (Doc. # 32) and Defendant Wall 2 Walls's Motion for Summary Judgment (Doc. # 33), both filed on August 30, 2013. On September 29, 2013, Southern-Owners and Wall 2 Walls filed responsive submissions. (Docs. ## 34, 35). On October 12, 2013, Wall 2 Walls filed a reply to Southern-Owners's response. (Doc. # 36). As discussed below, the

Court denies Southern-Owners's Motion for Summary Judgment and grants Wall 2 Walls's Motion for Summary Judgment.

## I. Factual Background

On May 29, 2010, Defendant Yarbra Gibbs was involved in an automobile accident in St. Petersburg, Florida, having been hit by a car driven by Keith Galloway. (Doc. # 32 at 2). At the time, Galloway was acting in the course and scope of his employment with Defendant Wall 2 Walls, and the vehicle was leased and/or owned by Clyde Walls.[1] (Id. at 1-3). The instant case arises from a complaint filed by Gibbs in state court on July 12, 2012, against Galloway, Walls, and Wall 2 Walls. (Doc. # 12-1). The complaint alleges the above facts, (Id. at 3), which neither party in this action disputes.

On the date of the accident, Wall 2 Walls maintained an insurance policy (Doc. # 1-2) with Plaintiff Southern-Owners that offered commercial general liability coverage. (Id. at 3). Wall 2 Walls also maintained a separate commercial automobile insurance policy (Doc. # 32-2) with Progressive Express Insurance Company ("Progressive").

---

[1] Walls 2 Walls emphasizes in its motion that the involved vehicle was leased and/or owned by Clyde Walls but not by Wall 2 Walls. (Doc. # 33 at 2). Southern-Owners concedes this point in its Complaint. (Doc # 1 at ¶ 15).

(Id.). The vehicle driven by Galloway on the date of the accident is identified as a covered automobile under the Progressive policy. (Doc. # 32-2 at 3). In its sworn insurance disclosures, provided to Gibbs's attorney as required pursuant to Florida Statutes § 627.4137, Progressive identified Wall 2 Walls, Clyde Walls, and Keith Galloway as its insureds. (Docs. ## 32 at 3; 32-3).

Following the accident, Progressive, on behalf of the insureds, offered to tender its policy limits in the amount of $100,000 to Gibbs. (Doc. # 32-4). The proposed release that accompanied Progressive's tender identified Galloway, Walls, and Wall 2 Walls as releasees. (Doc. # 32-5).

The Southern-Owners policy excludes coverage for "bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." (Doc. # 1-2 at 26). The policy provides for a limited exception, however, in the form of a "hired auto and non-owned auto liability" endorsement. (Doc. # 32 at 4). That endorsement reads:

**2. HIRED AUTO AND NON-OWNED AUTO LIABILITY**

Coverage for "bodily injury" and "property damage" liability provided under **SECTION I COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY**

–3–

>    **DAMAGE LIABILITY,** is extended as follows under this item, but only if you do not have any other insurance available to you which affords the same or similar coverage.
>
>    **Coverage**
>
>    We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto":
>
>    a. You do not own;
>
>    b. Which is not registered in your name; or
>
>    c. Which is not leased or rented to you for more than ninety consecutive days
>
>    and which is used in your business.

(Doc. # 1-2 at 14). On the date of the accident, Wall 2 Walls maintained no other commercial general liability policies. (Doc. # 33 at 4).

On September 22, 2010, Southern-Owners explained to Wall 2 Walls in a letter that it would not provide coverage for the claim. (Doc. # 1-3). Gibbs filed the underlying complaint in state court on July 12, 2012. (Doc. # 12-1). Southern-Owners filed suit against Wall 2 Walls, Galloway,[2] and Gibbs, in this Court on August 23, 2012. (Doc. # 1). The one-count Complaint seeks declaratory judgment pursuant

---

[2] The Court dismissed Galloway from this action on May 8, 2013, based on Southern-Owners's failure to effect service of process upon him. (Doc. # 29).

to Chapter 86, Florida Statutes and 28 U.S.C. § 2201 as to Southern-Owners's duty to provide a defense and indemnify Wall 2 Walls and Galloway for Gibbs's claims. (Id.).

On October 17, 2012, Wall 2 Walls filed a counterclaim against Southern-Owners, alleging that Southern-Owners's denial of coverage breached its duty to defend and indemnify Wall 2 Walls. (Doc. # 12). Cross motions for summary judgment are now before the Court on the issue of whether the Southern-Owners policy provides coverage to Wall 2 Walls for Gibbs's claim. (Doc. # 32; Doc. # 33).

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun

Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that

inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

### III. Analysis

In this diversity case, the Court applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. Tech. Coating Apps., Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). Furthermore, this Court must apply Florida law in the same manner that the Florida Supreme Court would apply it. Brown v. Nichols, 8 F.3d 770, 773 (11th Cir. 1993).

In the instant case, the parties dispute the applicability of the escape clause in the "hired auto and non-owned auto liability" endorsement of the Southern-

Owners policy. As stated previously, the endorsement reads as follows:

> **2. HIRED AUTO AND NON-OWNED AUTO LIABILITY**
>
> Coverage for "bodily injury" and "property damage" liability provided under **SECTION I COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** is extended as follows under this item, but only if you do not have any other insurance *available to you which affords the same or similar coverage.*
>
> **Coverage**
>
> We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto":
>
> a. You do not own;
>
> b. Which is not registered in your name; or
>
> c. Which is not leased or rented to you for more than ninety consecutive days
>
> and which is used in your business.

(Doc. # 1-2 at 14) (emphasis added).

The dispute turns on the meaning of the phrase "same or similar coverage." If Wall 2 Walls's automobile insurance policy with Progressive qualifies as the same as or similar to Wall to Walls's coverage under the Southern-Owners policy, the escape clause applies and the Southern-Owners policy does not extend coverage. See Md. Cas. Co. v. Reliance Ins. Co., 478 So. 2d 1068, 1071 (Fla. 1985)

(giving full effect to policy's escape clause and holding that the policy therefore did not cover tortfeasor). If, on the other hand, the two policies are not the same or similar, the escape clause does not apply and the Southern-Owners policy covers Wall 2 Walls's liability in the instant case. See id.

Southern-Owners asserts that the phrase "same or similar coverage" includes any "other insurance available which provided coverage for the underlying claim." (Doc. # 32 at 7). As Progressive offered to tender its policy limits to the underlying claimant, Southern-Owners argues that the Progressive policy therefore qualifies as "same or similar coverage," triggering the escape clause and relieving Southern-Owners of any obligation to defend or indemnify Wall 2 Walls.[3] (Id.)

---

[3] Wall 2 Walls contends that Southern Owners has asserted a contrary legal position in Southern-Owners v. Hayden, 2:08-cv-14381-JEM, and asks that the Court "not allow SOUTHERN-OWNERS to pick and choose what legal arguments it desires[.]" (Doc. # 36 at 3-4). The Court construes this as a request for judicial estoppel of Southern-Owners's argument. Wall 2 Walls claims that in earlier litigation, Southern-Owners asked the Southern District to distinguish between primary auto insurance and a commercial general liability policy in determining underinsured motorist benefits. (Id.). Even if the Court agreed that Southern-Owners's prior position is contrary to the one it now offers, judicial estoppel would not prevent Southern-Owners from advancing its current argument because Wall 2 Walls

Wall 2 Walls counters with a narrower definition of "same or similar coverage," arguing that it refers instead to "other insurance that provides the same type of coverage, as in this case,. . . other [commercial general liability] policies providing Hired Auto and Non-owned Auto coverage[.]" (Doc. # 33 at 12).

Neither party presents case law dispositive of the issue. Southern-Owners offers Auto Owners Ins. Co. v. Habbert, No. 5:09-cv-64-Oc-10GRJ, 2010 WL 3788149 (M.D. Fla. Sept. 24, 2010). Although Habbert discusses an escape clause bearing the same language as the one in the instant case, it does so very briefly, exclusively in dicta, and without reference to supporting case law. As such, this Court declines to adopt its reasoning.

Wall 2 Walls, in support of its position, offers two cases following Michigan law, McGow v. McCurry, 412 F.3d

---

was not a party to that case. See Colonia Refrigerated Transp., Inc. v. Mitchell, 403 F.2d 541, 550 (5th Cir. 1968) (explaining that judicial estoppel, like all estoppel, "is equitable in nature and is designed to protect those who are misled by a change in position"; therefore, it "may be invoked only by a party to the prior litigation or someone privy to a party") (binding under Bonner v. City of Prichard, Ala., 661 F.2d 1206 (11th Cir. 1981)). Consequently, the Court will consider Southern-Owners's argument that its policy is the same as or similar to the Progressive policy and will not utilize the doctrine of judicial estoppel.


1207 (11th Cir. 2005), abrogated on other grounds as stated in Diamond Crystal Brands, Inc. v. Food Movers International, Inc., 593 F.3d 1249 (11th Cir. 2010), and American States Insurance Company v. Kesten, 561 N.W.2d 486 (Mich. Ct. App. 1997). In both cases, an insurer's escape clause, bearing "same or similar coverage" language comparable to the policy disputed here, relieved the insurer of an obligation to pay uninsured motorist benefits when the insurer occupied a vehicle covered by another uninsured motorist policy. See McGow, 412 F.3d at 1220, n. 9; Kesten, 561 N.W.2d at 488.

Tellingly, each party claims that Kesten supports its own position. Southern-Owners points out that the Kesten court ruled against coverage, finding the escape clause applicable where the insured was covered under another policy. (Doc. # 35 at 5). Wall 2 Walls, on the other hand, argues that the Kesten court only found coverage because both policies in question were uninsured motorist policies and thus of a "same or similar" type. (Doc. # 33 at 12).

Kesten, however, is factually distinguishable from the case at bar. Where that case simply compares one uninsured motorist policy to another, here the Court must determine whether a commercial general liability policy provides the

same or similar coverage as an auto insurance policy. Southern-Owner's mechanical application of Kesten's result to the current dispute is thus insufficient to guide the Court's decision.

So, too, is the argument put forth by Wall 2 Walls. Neither the reasoning of McGow nor that of Kesten is adequately instructive here. McGow relies solely upon Kesten in interpreting the phrase "same or similar coverage," while Kesten in turn relies on another provision within the policy.  That provision stated explicitly that "if there is other *Uninsured Motorists Coverage* with us or any other insurer," then damages would be limited. Kesten, 561 N.W. 2d at 488, n. 1 (emphasis added).  The Court is not inclined to adopt Kesten's definition of "same or similar coverage" as superior to any other when that definition was derived entirely from another policy, in another case, in another jurisdiction.

Florida law requires courts to construe insurance contracts "in accordance with the plain language of the policies as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000).  Courts should read each policy as a whole, giving every provision its full meaning and operative effect. Fla. Stat.

§ 627.419(1); see also Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979). Where the policy language is plain and unambiguous, no special rule of construction or interpretation applies, and the court should give the language in the contract the meaning it plainly expresses. Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc., 586 So. 2d 95, 97 (Fla. 5th DCA 1991). However, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." Anderson, 756 So. 2d at 34. The court interprets ambiguous provisions "liberally in favor of the insured and strictly against the drafter." Id.

Contrary to Southern-Owners's assertion that the "'escape clause' language is clear, unambiguous, and requires no interpretation by this Court[,]" (Doc. # 35 at 4), this Court finds that the phrase "same or similar" renders the escape clause ambiguous. The policy excludes claims related to accidents involving automobiles owned by the insured from coverage. (Doc. # 1-2 at 26). The "hired auto and non-owned auto liability" endorsement, then, functions as something of an exception to a general

–13–

exclusion of automobile-related liability coverage, defining the circumstances under which certain auto accidents will be covered. The way the endorsement defines those circumstances, however, makes it difficult to ascertain whether the exception applies to the current situation.

If Southern-Owners intended to write a broad escape clause, one that would deny coverage under the endorsement unless the insured lacked applicable auto insurance, "it was incumbent upon [it] to do so unambiguously." Anderson, 756 So. 2d at 34. As Wall 2 Walls points out, Southern-Owners could have done exactly that by replacing "same or similar coverage" with a phrase such as "any other valid and collectible insurance" or "any other insurance, whether primary, excess, contingent, or on any other basis." (Doc. # 33 at 13); see also, e.g., Anderson, 756 So. 2d at 36 (holding that provision's lack of qualifying phrase explicitly stating that liability would be limited regardless of the number insured vehicles involved rendered the provision ambiguous).

As written, however, the escape clause is susceptible to two reasonable interpretations, those advanced separately by the parties. The Court, therefore, must

–14–

construe the ambiguous provision — the "hired auto and non-owned auto liability" endorsement — in favor of coverage and strictly against drafter Southern-Owners.

Wall 2 Walls requests declaratory judgment stating that coverage under the policy imposes a duty upon Southern-Owners to defend and indemnify Wall 2 Walls. (Doc. # 33 at 5). Under Florida law, the duty to defend is broader than the duty to indemnify. Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009). The decision of whether an insurer has a duty to defend "is determined solely by the claimant's complaint if suit has been filed." Higgins v. State Farm Fire & Cas. Co., 894 So. 2d 5, 9-10 (Fla. 2004). An insurer's duty to defend against a legal action is triggered "when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, Ins., 908 So. 2d 435, 442-43 (Fla. 2005).

There is no dispute that Wall 2 Walls is the named insured on the Southern-Owners policy or that Gibbs's complaint named Wall 2 Walls as a defendant. As explained above, the facts alleged in Gibbs's complaint fairly bring the suit within policy coverage under the "hired auto and non-owned auto liability" endorsement, and therefore

Southern-Owners has a duty to defend Wall 2 Walls in the underlying action.

In contrast to the duty to defend, the duty to indemnify is not determined by reference to the claimant's complaint, but rather by reference to the actual facts and circumstances of the injury. <u>Underwriters at Lloyds London v. STD Enters.</u>, 395 F. Supp. 2d 1142, 1147 (M.D. Fla. 2005). In this context,

> Insurance contracts are to be construed in a manner that is reasonable, practical, sensible, and just. . . . Terms used in a policy are given their plain and ordinary meaning and read in the light of the skill and experience of ordinary people. Provisions that exclude or limit liability of an insurer are construed more strictly than provisions that provide coverage.

<u>U.S. Fire Ins. Co. v. Freedom Vill. of Sun City Ctr.</u>, 279 F. App'x 879, 880-81 (11th Cir. 2008) (internal citations omitted).

Though the policy's language is ambiguous as to the endorsement's applicability, its language as to the endorsement's operation in the event of application is not. The "hired auto and non-owned auto liability" endorsement states that Southern-Owners "will pay those sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' arising out of the

—16—

maintenance or use of" qualifying automobiles. (Doc. # 1-2 at 14).  Reading these terms according to their plain and ordinary meaning, the Court determines that Southern-Owners has a duty to indemnify Wall 2 Walls for any sums Wall 2 Walls becomes legally obligated to pay as damages in the underlying action.  As such, the Court grants summary judgment in favor of Wall 2 Walls, finding that the endorsement extends coverage to Wall 2 Walls and that Southern-Owners therefore breached its duty to provide defense and indemnification.[4]

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Southern-Owners's Motion for Summary Judgment (Doc. # 32) is **DENIED.**

(2) Wall 2 Walls's Motion for Summary Judgment (Doc. # 33) is **GRANTED.**

(3) The Clerk is directed to enter judgment in favor of Wall 2 Walls and against Southern-Owners.

(4) The Clerk is directed to close this case.

---

[4] Wall 2 Walls also requests an award of attorney's fees, but fails to brief the Court on entitlement or amount. (Doc. # 33 at 15).  In the instance that Wall 2 Walls seeks attorney's fees, it should file a motion for attorney's fees by December 16, 2013, after consulting with opposing counsel pursuant to Local Rule 3.01(g).

–18–

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 26th day of November, 2013.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record